**Charles W. KLANKE et al.**

v.

**William B. CAMP, Comptroller of the Currency.**

**Civ. A. No. 69–H–1033.**

United States District Court,
S. D. Texas,
Houston Division.

May 25, 1971.

Joel Cook, Schlanger, Cook & Cohn, Houston, Tex., for plaintiffs.

William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiffs applied to the Comptroller of the Currency for permission to organize a new national bank pursuant to the provisions of 12 U.S.C. § 21 *et seq.* The Comptroller denied the application, and plaintiffs, alleging that the denial was "illegal, arbitrary, capricious and unfairly discriminatory," filed in this court an action to compel the Comptroller to grant the charter or "to state the terms upon which plaintiffs' application will be granted."

The Comptroller's response asserted that denial of an application for a na-

tional bank charter is a matter committed by Congress to the Comptroller's exclusive discretion and therefore, not subject to judicial review. In a Memorandum and Order dated October 28, 1970, Klanke v. Camp, 320 F.Supp. 1185 (S.D. Tex., 1970), it was held that this court has jurisdiction to consider the Comptroller's denial of plaintiffs' charter application and that plaintiffs are included within that class of persons whose interest is sufficient to permit them to maintain such an action.

By virtue, however, of the unquestionably great discretion committed to the Comptroller, the court was constrained to limit the scope of plaintiffs' available discovery. Thus, plaintiffs have not been permitted either to depose the Comptroller or to require him to answer interrogatories. Furthermore, it was required that plaintiffs, in order to prevail, clearly demonstrate that the Comptroller exercised his discretion

"in excess of his statutory grant of power, acted arbitrarily or capriciously, abused his discretion, or unlawfully discriminated in violation of the Constitution." *Klanke,* supra, at 1188.

For this purpose, the court granted plaintiffs an additional 30 days in which to

"submit to the court clear and convincing evidence that the Comptroller has abused his statutory authority in denying plaintiffs' charter application"

and ordered that the Comptroller

"release to plaintiffs, upon demand, all Government records pertaining to the denial of plaintiffs' charter application." *Klanke,* supra, at 1188.

Pursuant to the court's order, the Comptroller made available to plaintiffs the entire administrative record pertaining to plaintiffs' charter application, with the exception of a small portion which the Comptroller determined cannot be disclosed without significant damage to his ability effectively to supervise the national banking system, and, concerning which the court granted

defendant's motion for protective order on January 8, 1971. On February 9, 1971, the Comptroller moved the court to grant summary judgment in his behalf. The case is now before the court pursuant to such motion.

Plaintiffs subsequently attempted to obtain from the Comptroller further information, the compelled release of which it was deemed would not be consistent with the court's order of October 28, 1970. On April 1, 1971, the court heard oral argument, and granted plaintiffs leave to file additional affidavits to support their allegations against the Comptroller. These affidavits were submitted on May 5, 1971. They represent the opinions of eleven business and professional persons, including plaintiffs, all of whom are employed in or near the immediate vicinity in which plaintiffs have sought to establish their bank. The affidavits declare that "there is no national bank in the area embracing the Houston Ship Channel and Turning Basin, Hobby International Airport, the Park Place community, the commercial areas of Telephone Road, Gulf Freeway and South Houston, and that those who prefer or require the banking services of a national bank in said areas are compelled to conduct their banking business with the downtown Houston banks." The affidavits conclude that there is an urgent need for a national bank in the area described.

The court is compelled to find that plaintiffs have not discharged the rather onerous burden assigned to them in the court's Memorandum and Order of October 28, 1970. Plaintiffs have shown that they strenuously disagree with the Comptroller's ruling. The court may even allow that plaintiffs have demonstrated that a reasonable man, in the Comptroller's position, would have rendered a contrary decision. But to show this much is hardly to convince the court that the Comptroller acted "in excess of his statutory grant of power, acted arbitrarily or capriciously, abused his discretion, or unlawfully discriminated in violation of the Constitution."

The Comptroller's authority cannot be limited by the preferences of this court. Neither has Congress required that official to exercise what a court might subsequently deem to be "good judgment." His duty is merely to refrain from actions which are illegal, unconstitutional, or totally devoid of any rational foundation. On the basis of the voluminous evidence which plaintiffs have submitted to the court, including almost the entire record of the Comptroller in this case, after extending to plaintiffs an additional six months in which to present their supplementary evidence, and finally, after hearing oral argument on defendant's motion for summary judgment, the court is persuaded that plaintiffs have failed to carry their burden of proof, that they have failed to demonstrate to the court that the Comptroller abused his statutory authority and that, for such reason, relief must be denied.

Accordingly, defendant's motion for Summary Judgment is granted, and this case is hereby dismissed.

This is a final judgment.